*NOT FOR PUBLICATION*

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX
## APPELLATE DIVISION

| | |
|---|---|
| RAMON SANTOS, | D.C. App. Civ. No. 2004/133 |
| Appellant, | Re: Sup. Ct. Civ. No. 358/1996 |
| v. | |
| V.I. WATER & POWER AUTHORITY & EDWARD STEVENS, | |
| Appellees. | |

On Appeal from the Superior Court of the Virgin Islands

To Be Considered: July 10, 2009
Filed: February 26, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **AUDREY L. THOMAS**, Judge of the Superior Court, sitting by designation.

APPEARANCES:

**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
  *Attorney for Appellant.*

**Ishmael Meyers, Jr., Esq., AAG**
St. Thomas, U.S.V.I.
  *Attorney for Appellee.*

**Memorandum Opinion**

In this matter we are asked to consider whether the Superior Court erred in dismissing Appellant's claim for failure to prosecute. For the reasons set forth below, we will affirm.

I. **FACTUAL AND PROCEDURAL HISTORY**

This matter arises out of a personal injury action. Ramon Santos ("Santos" or "Appellant") alleges that on June 2, 1994, he was struck from behind by a vehicle driven by Edward Stevens ("Stevens") and owned by the V.I. Water and Power Authority ("WAPA") (Stevens and WAPA together are referred to as "Appellees"). On May 31, 1996, Santos filed a civil complaint in the Superior Court.

On January 30, 1997, default judgment was entered against the Appellees, leaving only the issue of damages for adjudication. During the course of discovery, Santos submitted several medical reports from physicians purportedly documenting his alleged injuries. Appellees, however, requested that Santos submit to an independent medical examination ("IME") pursuant to Rule 35 of the Federal Rules of Civil Procedure.[1]

When Santos refused to submit voluntarily to an IME, Appellees filed a motion to compel. On August 12, 2002, the Court

---

[1] The appointment of an impartial medical expert by the court in the exercise of its sound discretion is an equitable and forward-looking technique for promoting fair trial of lawsuits. *Scott v. Spanjer Bros., Inc.*, 298 F.2d 928 (2d Cir. 1962).

granted Appellees' motion and ordered Santos to submit to an IME by October of 2002. Santos' first IME was scheduled for October 29, 2002, in San Juan, Puerto Rico.[2] Appellees sent an advance of per diem and an electronic airline ticket to Santos' counsel in order to facilitate his attendance. Santos failed, however, to claim his ticket or attend the examination. Santos cited that an inadequate per diem and his misunderstanding of electronic tickets hampered his compliance with the trial court's Order.

In December of 2002, the matter came before the court to determine the parties' readiness for trial.[3] The court required Santos to submit to an IME by January of 2003, and ordered mediation to commence thirty days after the IME. A second IME was scheduled for January 14, 2003. In order to ensure his attendance, Santos' counsel arranged for a retired marshal to pick up Santos in St. Thomas, take him to the airport and accompany him to the IME in Puerto Rico. However, Santos did not appear at the airport or submit to the IME.

Thereafter, the parties stipulated to a second mediation date and a third IME scheduled for March 20, 2003, again in San

---

[2] At the time Santos lived on St. Thomas, U.S. Virgin Islands.

[3] The Order for readiness for trial was issued on December 4, 2002.

Juan, Puerto Rico.[4] The retired marshal flew from St. Croix to St. Thomas to accompany Santos to the IME in Puerto Rico. Despite the stipulation, Santos failed to attend the March 2003 IME. Santos' counsel averred that after he checked into the airport to fly to the IME, Santos suddenly dreaded a terrorist attack, "freaked out" and "fled" the airport. (J.A. 98.)

On April 30, 2003, Appellees filed a motion for sanctions and costs. Therein, Appellees sought the fees associated with scheduling the IMEs. However, prior to the Superior Court's ruling on sanctions, the Appellees arranged for a fourth IME scheduled for September 9, 2003. Santos did not attend the September 9, 2003 IME. In this instance, Santos claimed that he did not attend because of severe back pain.

The Appellees subsequently filed a motion to dismiss for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b). Santos' counsel filed an opposition. Therein, Santos' counsel argued that he "deserves one last chance" to comply with the court's Order and to attend the IME. (J.A. 134.) On May 5, 2004, the court granted Santos' request and denied the Appellees' motion to dismiss while granting the Appellees' motion for sanctions.[5]

---

[4] On March 12, 2003, the Court granted the stipulation.

[5] The court ordered Santos to pay $1,785.00 to the Appellees.

The court also granted Santos another opportunity to comply by scheduling a fifth IME, to take place within sixty days of the issuance of the Order. On June 23, 2004, however, Santos filed a motion to be relieved from the May 5, 2004 order. Santos explained that his failure to attend the IMEs was due to his immigration status. Santos claimed (1) that he could not attend the IME in Puerto Rico because he feared deportation to the Dominican Republic and (2) that his inability to speak English fluently had prevented him from communicating the true nature of his aversion.

On July 8, 2004, the Appellees opposed Santos' motion and renewed their motion to dismiss. In his response, Santos suggested that the IME be conducted in the Virgin Islands and offered to pay the physician's traveling expenses. On September 23, 2004, the Superior Court granted Appellees' motion to dismiss, and the matter was dismissed without prejudice. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to consider final civil judgments arising from the Superior Court of the Virgin Islands. Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a; V.I. Code Ann. tit. 4, §§ 33-40 (2001).

We review the Superior Court's decision to dismiss Santos' case pursuant to Federal Rule of Civil Procedure 41(b) for an abuse of discretion. *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 691 (3d Cir. 1988)(citing *NHL v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976)(internal citations omitted)); *see also Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)(dismissal is appropriate only "in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits").

### III. ANALYSIS

Santos' cause of action was dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), which provides in pertinent part that:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.

*Id.*

In *Poulis v. State Farm Fire & Cas. Co.*, the U.S. Court of Appeals for the Third Circuit ("Third Circuit") examined the factors a trial court must balance in deciding whether to dismiss a complaint due to a plaintiff's failure to meet court-imposed deadlines. 747 F.2d 863, 868-70 (3d. Cir. 1984). These factors are:(1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) whether there has been a history

of dilatoriness in the case; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.*

The *Poulis* analysis involves a balancing test, and therefore, it is not necessary that all of the *Poulis* factors be met to warrant dismissal. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). However, because a Rule 41(b) dismissal order deprives a party of its day in court, a reviewing court must carefully examine each case to ascertain whether the trial court abused its discretion in applying such an extreme sanction.[6] *Dunbar v. Triangle Lumber and Supply Co.*, 816 F.2d 126 (3d Cir. 1987); *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984).

### 1. Plaintiff's personal responsibility

In determining whether dismissal is appropriate, we first look to whether the party, as opposed to his counsel, bears personal responsibility for the action or inaction which led to the dismissal. *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873 (3d Cir. 1994).

---

[6] The propriety of court-imposed sanctions must be reasonable in light of a party's violative conduct. *See In re Hendricks*, 38 V.I. 127, 132 (Terr. Ct. 1998).

We agree with the Superior Court's determination that Santos is personally responsible for his conduct. After Santos failed to submit to an initial IME, counsel arranged several separate appointments. Santos missed all of them. For every missed IME, he cited a different personal reason for failing to attend.

Santos claimed he could not attend the IME on October 29, 2002, because of an inadequate per diem and his unfamiliarity with electronic ticketing. Thereafter, an IME was scheduled for January 14, 2003. Santos' counsel arranged for an escort to pick him up, take him to the airport, attend to him on the aircraft and personally accompany him to the IME. However, Santos claimed that miscommunication with the escort prevented him from meeting the escort and attending the January 2003 appointment.

Santos missed his March 20, 2003, appointment despite an escort's presence because he feared an impending terrorist attack. When the IME was rescheduled for September 9, 2003, Santos claimed severe back pain was an impediment to compliance. Finally, when the court ordered that an IME to take place by July 5, 2004, Santos claimed that he feared deportation.

Santos nonetheless argues that he is not personally responsible for ignoring the trial court's Orders because of his legitimate trepidation of deportation. Santos' counsel avers that she learned of Santos' immigration status only when his case

faced dismissal. Thus, even if Santos' fear was legitimate, he is at best, personally responsible for failing to arrange an IME in the Virgin Islands or to disclose his fear of deportation to his legal representative. In other words, if Santos were forthright from the beginning, he could have scheduled the examination without disregarding the trial court's Orders or causing avoidable, unnecessary delay.

Santos also claims that a Spanish-English language barrier prevented him from communicating his immigration status to his attorney earlier. However, Santos adequately articulated the facts giving rise to his cause of action, sufficiently communicated back pain, explained his fear of flying and complained of an inadequate per diem to his attorney.

Our exhaustive review of the record reveals that this case is not a sympathetic circumstance of an innocent client suffering the drastic sanction of dismissal due to dilatory counsel. *See Adams*, 39 F.3d 873. Rather, Santos personally failed to submit to court-imposed IMEs despite his attorney's vigorous attempts to coax him into compliance. In sum, even if we were to accept Santos' fear of deportation as true, he bears personal responsibility for the repeated delay caused by his refusal to attend the IME. Thus, this factor weighs against Santos.

### 2. Prejudice to adversary

Evidence of prejudice to an adversary bears substantial weight in support of a Rule 41(b) dismissal. *Adams*, 29 F.3d at 873-874. Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id.* at 874 ; *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

This type of prejudice also involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend funds to obtain court Orders for compliance. *See, e.g., Poulis*, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers and the defendant had to file its pre-trial statement without the opportunity to review plaintiffs' pre-trial statement, which was due to be filed first); *Ware*, 322 F.3d at 220-23 (affirming the trial court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request

for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Santos' refusal to submit to the IME prejudiced the Appellees. This cause accrued on June 3, 1994, the day after Santos was injured. *See Monkelis v. Mobay Chemical*, 827 F.2d 937, 938 (3d Cir. 1987)(cause of action accrues the day after the event). Santos' complaint was filed on May 31, 1996, on the cusp of the two-year limitations period applicable to personal injury actions in the Virgin Islands. *See* V.I. Code Ann. tit. 5, § 31. Default judgment on the question of liability issued on January 30, 1997, only seven months after the complaint was filed. Only the issue of damages remained to conclude litigation. Instead of complying with court-imposed IMEs and moving this case towards resolution on the merits, Santos offered numerous excuses for failing to comply with the court's various orders.

Santos' conduct significantly contributed to the appeal now before this Court, more than fifteen years after the underlying cause of action accrued. Santos argues that because the issue of liability has been determined, the Appellees have suffered neither prejudice nor irremediable harm as a result of his delay. (App. Brief 18.) However, 'prejudice' under the *Poulis* test is not limited to irremediable harm, but also encompasses the extra costs of repeated delays and filing of motions due to a

plaintiff's improper behavior. *Andrews*, 132 F.R.D. at 405 (citing *Curtis T. Bedwell & Sons v. Int'l Fidelity Ins. Co.*, 843 F.2d 693-94 (3d Cir. 1988)). Here, Appellees were clearly prejudiced by the expenses of time and costs incurred for the several motions and filing fees associated with their repeated attempts to compel Santos to attend the court-mandated IMEs.

Additionally, where damages remained the only issue in litigation, Santos' conduct plainly frustrated the Appellees' attempts to determine the cause and extent of Santos' medical injury and adequately prepare a trial strategy.[7] As the Superior Court aptly noted, neither mediation nor settlement discussions, nor trial could occur until the IME was completed. Mr. Santos' conduct clearly contributed to protracting these proceedings, resulting in further prejudice to the Appellees. Accordingly, this factor weighs against Mr. Santos.

### 3. History of dilatoriness

---

[7] Rule 35 helps to further an important federal policy, i.e., securing "the just, speedy and inexpensive determination of every action." *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970). As such, the purpose of Rule 35 is "to inform the court and the parties of the true facts as to the physical condition of the party claiming injury." *Id.*

Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to discovery requests, or consistent tardiness in complying with court orders.[8] *Poulis*, 747 F.2d at 868; *Adams*, 29 F.3d at 874; *see also Ware*, 322 F.3d at 224 (finding that a history of dilatory conduct existed because the plaintiffs "failed repeatedly" to provide a damages calculation for the defendant); *see also Emerson*, 296 F.3d at 191(finding that a history of dilatory conduct existed as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines).

Santos' history of dilatoriness is self-evident. This is not a case where "there was only one failure to comply in a timely manner." *See Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982) (vacating dismissal and remanding to trial court to consider alternatives to dismissal when plaintiff was tardy meeting court orders to obtain new counsel and plaintiff did not personally contribute to delinquency). Rather, in this case, five IMEs were scheduled over a span of two years.

---

[8] In *National Hockey League*, the trial court dismissed the case after 17 months in which the plaintiffs failed to answer crucial interrogatories despite numerous extensions, and broke promises and commitments to the trial court. 427 U.S. at 643. The Supreme Court approved the dismissal as a proper response to such behavior. *Id*.

Three of those IMEs were ordered by the court. Two mediation referral Orders were issued that were contingent upon the completion of an IME. The matter was placed on two court calendars for trial pending an IME that never occured. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. 626 (1962) (the power of the court to prevent undue delays and to control its calendars must be weighed against the policy of law which favors disposition of litigation on its merits).

In sum, Santos' refusal to attend several IMEs despite court-imposed deadlines constituted a clear pattern of dilatoriness. *See Poulis*, 747 F.2d at 863 (history of ignoring court-imposed time limits is intolerable); *see also Emerson*, 296 F.3d at 191 (given Plaintiff's behavior over the more than two years that the case was pending, the trial court did not abuse its discretion in dismissing the matter for want of prosecution). Thus, this factor weighs against Santos.

### 4. Willfulness or bad faith

In evaluating a dismissal, this court looks for the type of willful or contumacious behavior characterized as "flagrant bad faith." *See Adams*, 29 F.3d 875. Generally, "[w]illfulness involves intentional or self-serving behavior." *Id.* If the conduct is merely negligent or inadvertent, it is generally not

"contumacious." See Poulis, 747 F.2d at 868-69 (finding that plaintiff's counsel's behavior was not contumacious because, although he had missed deadlines, there was no suggestion that his delays were for any reason other than his and his wife's poor health); see also Emerson, 296 F.3d at 191 (finding bad faith because the conduct went beyond mere negligence).

Santos argues that his conduct was neither willful nor motivated by bad faith. Rather, Santos posits that his refusal to comply with the court's order was due solely to his sincere fear of deportation. Based on the record before us, this Court can only speculate as to whether or not Santos chose to disregard the court's orders for an IME to gain a strategic advantage in litigation.

However, Santos' conduct, his appellate briefs and the record before us all indicate that, at best, he weighed the risk of attending the IME in Puerto Rico against notifying his attorney and the court of his immigration status. Santos chose neither to attend the IME nor to inform his attorney of his immigration issues.[9] As such, Santos' choice, even if motivated

---

[9] For the first time on appeal, Santos argues that his refusal to attend an IME in Puerto Rico for fear of deportation, is akin to exercising his Fifth Amendment Privilege against self-incrimination. We reject this argument. Ledesma v. Gov't of the V.I., 2009 U.S. Dist. LEXIS 35126, at *4 (D.V.I. App. Div. April 22, 2009)("Generally, issues raised for the first time on appeal

by a substantiated fear of deportation, was neither unintentional nor inadvertent. Indeed, we can reasonably infer that his decision not to submit to an IME was a calculated one fueled by his fear of deportation. Nonetheless, we can only speculate as to whether or not Santos refused an IME to gain a tactical advantage in litigation. Thus, this Court will not weigh this factor against him.

### 5. Effectiveness of other sanctions

A trial court must consider the availability of sanctions alternative to dismissal. *Poulis*, 747 F.2d at 869. However, though there are a wide variety of sanctions short of dismissal available, a trial court need not exhaust them all before finally dismissing a case. *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). The exercise of discretion to dismiss "requires only that possible and meaningful alternatives be reasonably explored, bearing in mind the drastic foreclosure of rights that dismissal effects." *Id.*

The court granted several of the Appellees' motions to compel an IME before issuing sanctions. Five IMEs were scheduled

---

should be rejected summarily."(quoting *Preiss v. Severe*, 22 V.I. 433, 435 (1986))).

and Santos failed to appear for any of them. The Appellees filed a motion for sanctions, which was initially denied. Thereafter, the Appellees sought dismissal, which was also initially denied.

After Santos' conduct persisted, on May 6, 2004, the court considered alternatives to dismissal when it levied monetary sanctions against Santos in the amount of $1,785.00. After sanctions were levied, the court afforded Santos another opportunity to comply when another IME appointment was scheduled. Again, Santos refused to attend.

Despite sanctions, Santos consistently insisted on violating the trial court's Orders. After years of non-compliance, various meetings, disregarded scheduling Orders, assertions of failed communication and monetary sanctions, the trial court ultimately issued its Order of dismissal. Under these circumstances, any sanction short of dismissal was clearly ineffective.[10] As such, this factor weighs against Mr. Santos.[11]

---

[10] Our decision on this factor is a result of balancing the deferential abuse of discretion standard we afford Superior Court decisions of this nature against the Third Circuit's preference for resolving cases on the merits. *Scarborough*, 747 F.2d at 875; *Dunbar*, 816 F.2d 126. Our determination is further tempered by the monetary sanctions already levied, and further attuned by our deference to the trial court's inherent power to manage its docket. *Link*, 370 U.S. at 626; *Poulis*, 747 F.2d at 869.

[11] We note that one sanction the trial court did have at its disposal but did not use was precluding Santos from presenting evidence of medical damages. *See generally Poulis*, 747 F.2d 863.

### 6. Meritoriousness of claim or defense

A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense. *Poulis*, 747 F.2d at 869-870. Santos claims that, if this case had gone to trial, he would have established that the Appellees were liable for the injuries he suffered as a result of being rear-ended by a vehicle owned by WAPA and driven by Stevens. In this case, liability was established by default. Only the issue of damages remained. While we express no opinion on whether Santos would have prevailed, this *Poulis* factor weighs in his favor.[12] *Poulis*, 747 F.2d at 870.

## V. CONCLUSION

For the reasons cited above, four of the six *Poulis* factors weigh against the Appellant. Our independent review of the record

---

Given the nature of Santos' cause of action, such a sanction may have resulted in as draconian a result as dismissal. We cannot, therefore, conclude that the trial court abused its discretion by not exercising this available option.

[12] Santos cites *Glo Co. v. Murchison & Co.*, for the proposition that the meritoriousness factor weighs heavily against dismissal. 397 F.2d 928, 929 (3d Cir. 1967). However, in *Glo Co.*, the Court did not engage in a *Poulis* balancing test. *See id.* at 928 (reviewing the district court's application of Civil Rule 12 of the United States District Court for the District of Delaware).

reveals that the trial court invested significant time in thoroughly evaluating each of the *Poulis* factors before arriving at the conclusion that dismissal was appropriate. We agree and **AFFIRM**.